PADOVANO, J.,
concurring.
I agree that the trial judge must sentence Annette Fulton to a minimum term of three years in the Department of Corrections and that he is also required to assess a fine against her in the amount of $50,000. However, I am compelled to say that this is not my idea of justice. To the contrary, I think that this case is an example of the kind of injustice that can be done when a judge is required to apply a rigid mandatory minimum sentencing statute that removes judgment and discretion from the judicial process.
Ms. Fulton is the single mother of six children. She is twenty-eight years old, and the crime that became the subject of the charge against her in this case was her first offense. She sold forty grams of cocaine in a desperate effort to obtain enough money to buy Christmas presents for her children. She did not expect that *486 her motive in committing the crime would exonerate her or even that it would mitigate her punishment. Instead, she entered an unconditional plea of guilty and stood prepared to accept whatever punishment the trial judge was to impose.
During the sentencing hearing, Ms. Fulton promised the trial judge that she would never commit another crime. This is the kind of statement that is often made at sentencing hearings and often taken with a grain of salt, but the judge may have believed it in this case, given the defendant’s age and her lack of any prior criminal record. He may have thought that Ms. Fulton made a tragic mistake and that her conduct was an isolated incident that would not recur. It would be logical to assume that she did not suddenly decide to embark on a life of crime at the age of twenty-eight. As all experienced trial judges know, the propensity for criminal behavior usually shows up much earlier in life.
Taking all of these facts into consideration, the trial judge decided to place Ms. Fulton on probation for a period of five years. His only error, as odd as it may seem, was that the law did not permit him to use his own judgment in deciding on the proper sentence. Section 893.135(l)(b)l.a., Florida Statutes provides that any person who sells cocaine in an amount more than 28 grams but less than 200 grams must be sentenced to at least three years in prison and must pay a fine of at least $50,000.
Section 893.135(l)(b)l.a., Florida Statutes was enacted twenty-five years ago and since then it has served as a model for many other statutes of its kind. We now have a host of mandatory minimum statutes, one for nearly every kind of crime that could be deserving of a serious punishment. See, e.g., § 775.082(9)(a)3., Fla. Stat. (2003) (releasee reoffenders); § 775.084(4)(c) (three strikes); § 775.084(4)(d) (violent career criminals); § 775.087 (ten-twenty-life); § 790.235 (possession of firearm by violent career criminal). Even the crimes that are not subject to mandatory minimum sentencing statutes are controlled by an intricate set of restrictions imposed by the Criminal Punishment Code. See § 921.002, Fla. Stat. (2003). The time a defendant is required to serve under the Code can be determined within a fraction of a month.
For the first one hundred and fifty years of our history, Florida Legislators set only general parameters and trusted judges to decide the appropriate punishment for a crime. They seemed to understand that the judge was a neutral professional who was in the best position to make the final decision. It is surprising to me how fast that has all changed. In the last twenty-five years, the sentencing function has been taken over almost entirely by the Legislature. Anyone who thinks that a Florida judge has the power to decide what the proper sentence should be in a criminal case would be mistaken. In many cases judges are not deciding much of anything. For the most part, they are merely doing the math and filling out the forms in an effort to identify the sentence the Legislature has decided on in advance. The work they do in arriving at the proper sentence could often be done by someone who has no training or experience in the law, or by someone who does not have any of the qualities our citizens can rightfully expect of judges.
Mandatory minimum sentencing statutes do have some positive features in that they afford an element of certainty and they apply equally to everyone. But these are the same features that can work to impair justice. Every case that is within the grip of a mandatory minimum sentencing statute will come out the same way whether it should or not. Judges have no power to *487 make distinctions or exceptions, even when that is necessary to ensure that justice is done. This is not realistic. In my view, the best criminal sentencing statutes would be those that offer predictability, but not at the expense of individual judgment. Every case is different. Judgment also has a place in the sentencing process, and I think it is foolish to eliminate it entirely.
I doubt that Ms. Fulton is the person the Legislature had in mind when it enacted section 893.135(l)(b)l.a. But the statute applies to her nonetheless. The mandatory minimum sentence is required in every case, without regard for any of the factors that reasonable people would use to distinguish one case from another. The statute does not take into account the age or prior criminal record of the offender, the motive the offender had for committing the crime, the need for imprisonment, or any of the other circumstances in which the crime was committed. A hardened criminal who imports 200 grams of cocaine into the state with the intention of selling it to school children would be subject to the same mandatory minimum sentence the law requires for Ms. Fulton.
This brings me to the heart of my concern. Statutes like the one at issue here remove the human element from our system of justice, and that presents a serious danger. The Legislature cannot possibly envision every situation in which a statute will apply when it is enacted. An inflexible statute that commands a particular result regardless of the facts can easily produce an unjust result. That such a statute will be applied in a way that was not expected is only a matter of time.
Rigid and inflexible statutes remove the most important quality the trial judge may have to offer the parties: the wisdom to make a decision that is fair in the context of the case. Sentencing decisions are now frequently made without the benefit of wisdom or judicial experience and, in some cases, without any input by the trial judge. A defendant’s fate is often decided not with the use of critical thinking or judicial experience, but rather by the application of a one-size-flts-all statute.
The case against Robert Schaeffer is a good example. Mr. Schaeffer was caught shoplifting some clothing from a Burdines store and he sprayed the security guard with pepper spray in an effort to get away. Because the pepper spray was technically a “weapon,” and because Mr. Schaeffer had been released from prison for drug and property crimes less than three years earlier, he qualified for sentencing as a prison releasee reoffender. The statute required the trial judge to sentence Mr. Schaeffer to a mandatory minimum sentence of thirty years in prison.
The appellate court had no choice but to affirm the thirty-year sentence, but one of the judges on the panel noted that the statute produced a “senseless result.” See Schaeffer v. State, 779 So.2d 485, 486 (Fla. 2d DCA 2000) (Seals, J., Associate Judge, concurring). In his view, the case was “a prime example of what can go wrong when sentences are decided outside the courtroom by someone other than the presiding judge.” Id. at 485.
Stiff sentences are often necessary to serve the retributive goal of the criminal justice system and to ensure the safety of the community, but these objectives can be achieved without sacrificing the ability to make reasoned judgments. The harsh result that an inflexible statute can produce in an exceptional case like this one can be avoided. It is possible for the Legislature to set a policy of strict punishments for certain crimes like trafficking in cocaine without taking away the power of the courts to make the kind of distinctions that are necessary to give life to the policy.
*488 I bring up these points only because I think that Florida citizens should be asking questions now about our criminal justice system. The first of these questions is whether there is any need to remove judicial discretion in sentencing. I have never met a judge who wanted to establish a record of leniency toward dangerous criminals. To the contrary, it seems to me that most judges share the Legislature’s goal of ensuring the safety of Florida citizens. So, it is curious indeed that the Legislature would find a need to take away judicial discretion in sentencing. My colleague, Judge Seals, posed the same question in relation to the releasee reof-fender statute. He did not understand “what the legislature is so concerned about today that it takes traditional judicial authority away from judges.... ” Schaeffer v. State, 779 So.2d at 490.
Another question worth asking is whether mandatory minimum sentencing statutes have been effective. I do not know the answer, but I do know that very few people have even investigated the issue. Section 893.135(l)(b)l.a. serves as a good example. We cannot compare the incidence of trafficking crimes before the enactment of the law in 1979 to the incidence of trafficking crimes after the law, because drug crimes are not included in the conviction records reported by the Florida Department of Law Enforcement. What little information we do have, though, suggests that the statute may not be working as intended.
The Department of Law Enforcement does publish annual arrest records for drug cases. According to these records, the number of arrests for all drug crimes has risen steadily from about 15,000 per year in 1971 to about 150,000 per year in 1998. See Chari Analysis of Trends, Uniform Crime Report, (1999). This is not a perfect measure of the effectiveness of the statute, because the number of arrests is not related to population changes. Nevertheless, it is apparent from the Department’s statistics that the number of arrests for drug crimes is increasing at a greater rate than the increase in the population. If that is so, we should at least question whether it was worth it to require mandatory minimum sentences for drug crimes.
Appellate courts are required to enforce the law as it is written, and we have done that in this case. However, I think it is also my duty as a judge to question the wisdom of a law that produces an unfair result. The safety of the community will not be improved by putting Ms. Fulton in prison for three years. If the $50,000 fine is collectable at all, it will only take money away from her children. Florida citizens will bear the cost of supervising Ms. Fulton’s children in relative placements or in foster care. The social cost of separating the children from their mother and the financial cost of supporting them does not, in my view, justify any deterrent or punitive effect the sentence may have.
The trial judge made a perfectly reasonable decision in this case. If the law permitted the trial judge to use his own judgment, I would affirm.